CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JAN 15 2010

JOHN F. CORCORAN, CLERK
BY: /s/ /DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROSE C. CALHOUN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:08cv00619 |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Rose C. Calhoun ("Calhoun") brings this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act"). On appeal, Calhoun contends that the Administrative Law Judge ("ALJ") erred by failing to provide her counsel a copy of Dr. Bruce Sellars' post-hearing consultative psychological examination report. The ALJ issued a partially favorable opinion, finding Plaintiff disabled as of August 24, 2006, the date of Dr. Sellars' examination, but not before.

Having reviewed the record, the undersigned finds that remand is warranted in this case. Regardless of the ALJ's failure to proffer the report to Plaintiff, the ALJ's decision is not supported by substantial evidence. There is a potential inconsistency between the denial of disability benefits for the period preceding Dr. Sellars' examination and the award of benefits as of that date, given Dr. Sellars' findings that Calhoun's depression is chronic and longstanding. Therefore, the undersigned recommends that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent herewith.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that his ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

## II

Calhoun was born in 1954, (Administrative Record, hereinafter "R." 59), and she graduated from high school. (R. 232, 252.) She previously worked as a sales representative. (R. 62, 252-54.) Calhoun alleges a disability onset date of September 27, 2002, due to a broken tailbone. (R. 127.) Her application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before the ALJ on August 23, 2006. (R. 248-67.) In determining whether Calhoun is disabled under the Act, the ALJ found that she has medically determinable impairments, including chronic lumbar strain, degenerative joint disease of the hands and feet, depression, anxiety, obsessive-compulsive disorder, attention deficit hyperactivity disorder, pain disorder, and dependent personality disorder, that qualify as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (R. 21.) The ALJ concluded that between September 27, 2002 and August 23, 2006, Calhoun retained the RFC to perform light work, with mild limitations in the use of her hands and capacity for social interaction. (R. 21.) Finding there are a significant number of jobs in the national economy that she could have performed during this period, the ALJ held that Calhoun was not disabled under the Act. (R. 21.) However, he found that since August 24, 2006, Calhoun's mental impairments have precluded performance of any gainful activity on a regular basis, and there are no jobs existing in significant numbers that Plaintiff can perform. (R. 21-22.) The Appeals Council denied Calhoun's request for review and this appeal followed. (R. 6-8.)

## III

Calhoun's sole argument on appeal is that the ALJ violated the agency's own internal procedures when he failed to proffer Dr. Sellars' post-hearing consultative report to Plaintiff or her counsel. Plaintiff contends that she was denied the opportunity to present argument that Dr.

Sellars' report establishes disability as of her alleged onset date, and she asserts this case should be remanded for a supplemental hearing.

Calhoun bases her claim on the procedures set forth in the Social Security Administration's Hearings, Appeals and Litigation Law Manual (hereinafter "HALLEX"), which "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels." HALLEX § I-1-0-1.[2] Pursuant to the manual, the ALJ must proffer all post-hearing evidence unless the evidence was submitted by the claimant or her representative, the claimant knowingly waived her right to examine the evidence, or the ALJ proposes to issue a fully favorable opinion. HALLEX § I-2-7-30(A).

None of these exceptions applies in the instant case. Disability Determination Services referred Calhoun to Dr. Sellars for a consultative psychological examination, which took place on August 24, 2006, the day after the administrative hearing. (R. 237-44.) The ALJ left the record open for thirty days to accommodate the filing of the report (R. 262), and Calhoun did not waive her right to examine it. Relying on Dr. Sellars' opinion, the ALJ issued a partially favorable decision finding Calhoun disabled as of August 24, 2006, but not before.

The Fourth Circuit has not addressed the meaning and effect of HALLEX, and circuits are split with respect to whether the agency must follow its HALLEX guidelines. For example, in Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000), the Ninth Circuit held that HALLEX does not have the force and effect of law and declined to review allegations of noncompliance with the manual. See also Melvin v. Astrue, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009) (citing Moore for the proposition that HALLEX lacks the force of law and rejecting claimant's reliance on the

---

[2] HALLEX is available at http://www.ssa.gov/OP_Home/hallex.

ALJ's alleged failure to comply with HALLEX). In contrast, the Fifth Circuit has determined that HALLEX violations can be grounds for relief when a claimant shows prejudice as a result of the violation:

> While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' If prejudice results from a HALLEX violation, the result cannot stand.

Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (quoting Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981)); see also Mickles ex rel. Mickles v. Apfel, No. 00-0095-BH-C, 2000 WL 1562850, at *1 (S.D. Ala. Sept. 26, 2000) (remanded on Commissioner's motion for supplemental hearing to give claimant opportunity to question author of post-hearing consultative psychological evaluation report, pursuant to HALLEX § I-2-7-30).

Regardless of the ALJ's failure to proffer Dr. Sellars' post-hearing report, the undersigned finds that remand is appropriate in this case, because there is a potential inconsistency between the denial of disability benefits for the period preceding Dr. Sellars' August 24, 2006 examination and the award of benefits as of that date. As such, the ALJ's decision is not supported by substantial evidence.

The ALJ determined that as of August 24, 2006, Calhoun's mental impairments have caused marked limitations in her concentration and at least moderate limitations in social functioning and activities of daily living, eroding the occupational base to the point that no jobs exist that she is capable of performing. (R. 20.) Dr. Sellars' report bolsters this finding of disability. Dr. Sellars concluded at his evaluation on August 24, 2006 that Calhoun is significantly and chronically depressed. (R. 240.) He noted that she has no contact with friends or family, her concentration and attention seem to be particularly poor, and she is plagued by a

6

high degree of anxiety characterized by perfectionistic thinking and obsessive-compulsive patterns. (R. 240.) He deduced that these obsessive-compulsive tendencies would interfere with certain types of work, that she would have difficulty interacting with others, and that she would have difficulty making decisions in the workplace. (R. 240.) Indeed, in a Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Sellars opined that Calhoun has moderate limitations in her ability to understand and carry-out detailed instructions, work with or near others without being distracted, make simple work-related decisions, and respond appropriately to work pressures and changes in a routine work setting. (R. 242-43.) Additionally, he found that she has marked limitations in her ability to maintain concentration for extended periods of time. (R. 242.) He tagged her Global Assessment of Functioning (GAF) at 45[3] and viewed her prognosis to be poor.

Substantial evidence supports the ALJ's determination that Calhoun is disabled as of August 24, 2006. However, there is inconsistency in the ALJ's decision, stemming from his finding that between September 27, 2002 and August 23, 2006, the period preceding Dr. Sellars' evaluation, Calhoun had no limitations in concentration and activities of daily living and no more than mild limitations in social functioning. (R. 20.) The ALJ fails to acknowledge or address Dr. Sellars' determination that Calhoun suffers from chronic depression, which he describes as "longstanding."

On the personality assessment inventory administered by Dr. Sellars, Calhoun reported significant depression with thoughts of worthlessness, hopelessness and personal failure. (R.

---

[3] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 1994). A GAF of 41-50 indicates than an individual has "[s]erious symptoms or any serious impairment in social, occupational, or school functioning . . . ." Id. at 34.

7

239.) Additionally, she claimed to have difficulty concentrating, to feel sad, and to have lost interest in normal activities. (R. 239.) However, Dr. Sellars observed, "there appeared to be relatively few physiological signs of depression." (R. 239.) He concluded that "[t]his likely suggests that the depression is longstanding," (R. 239),[4] and further noted that she gives the impression that she is "significantly and likely chronically depressed" with a history of abusive and codependent relationships. (R. 240.) Calhoun complains of a prolonged germ phobia that causes her to wash her hands fifty times per day (R. 238), which lends further credence to Dr. Sellars' finding that her mental impairments are longstanding. He determined that her anxiety is "constant" and "quite high." (R. 238.) He remarked that she exhibits low self-esteem as well as a low energy level, passivity, and withdrawal, which he indicated may hinder her ability to engage in treatment. (R. 239.) Indeed, Dr. Sellars stated that Calhoun did not appear to be motivated to seek treatment and that her prior therapist was also "under the impression that she was poorly motivated and unable to see that she could actively change the direction of her life." (R. 240.)

In deciding that Calhoun was not disabled from September 27, 2002 to August 23, 2006, the ALJ gave great weight to the state agency psychologists, who found that Calhoun had no medically determinable impairment in 2003 (R. 171-85), and only a non-severe anxiety-related disorder and history of anxiety, with mild limitations in maintaining concentration, persistence, or pace, in 2005. (R. 218-29.) The ALJ also cited the fact that Calhoun did not seek mental health treatment until March, 2005, and that at her second visit in January, 2006, she articulated no goals other than securing disability benefits. (R. 20.) Undoubtedly, Calhoun's mental health treatment has been sporadic. However, there is enough in the record to raise questions about the

---

[4] Dr. Sellars describes Calhon's depression as "longstanding" on the bottom of page 3 of his report. (R. 239.) Page 4 of his report is missing from the record. See discussion, infra.

significance and duration of her mental impairments, especially given Dr. Sellars' view that Calhoun's depression is longstanding and his conclusion that her condition renders her unmotivated to seek treatment.

The record is replete with Calhoun's complaints of suffering physical abuse at the hands of her significant others. (R. 150, 154, 156, 158-59, 187, 188, 203, 206, 231, 232-36, 254, 258.) At the administrative hearing, Calhoun testified that she has been in a psychiatric center twice, the second time in 2000. (R. 258.) Calhoun presented to Lewis Gale Clinic on June 10, 2002 with a chief complaint of "nerves." (R. 154.) Notes reveal that her husband reported making an agreement with Calhoun: he would stop drinking if she took an antidepressant. (R. 154.) Calhoun stated she feared her husband would abuse her if she could not get help with her anxiety. (R. 154.) Records reflect a diagnosis of anxiety and a prescription for Paxil. (R. 155.) In the fall of 2002, Calhoun reported to Dr. Tims that her husband pushed her into a box fan. (R. 150.) Dr. Tims advised her to seek counseling services. (R. 151.) Notes from Kuumba Community Health and Wellness Center on February 18, 2005 indicate Calhoun presented to "talk." (R. 188.) Calhoun said that she was a victim of domestic violence and that she lived a "stressful life style." (R. 188-89.) It was recommended that she follow up with Ann Sauls for counseling. (R. 189.) In an intake assessment completed on March 1, 2005, Calhoun described her series of abusive and dysfunctional relationships. (R. 232-33.) Notes indicate she was on Prozac at the time. (R. 234.) She was diagnosed with anxiety disorder and codependent personality disorder traits, and given a GAF of 65.[5] Ann Sauls recommended 15 counseling

---

[5] A GAF of 61-70 indicates than an individual has "[s]ome mild limitations or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 1994).

sessions. (R. 236.) Calhoun did not return until January 9, 2006, at which time she stated that she was reaching the end of her rope with her abusive, live-in boyfriend, and she was "afraid of what she might do to him if she 'snaps.'" (R. 231.) She indicated she was seeking disability benefits and that she could not take care of herself because she cannot concentrate. (R. 231.) No goals were identified in the session other than obtaining disability benefits. (R. 231.)

Plaintiff's counsel represented during oral arguments that Calhoun's lack of mental health treatment was a result of her lack of funds. This representation is corroborated by the record. For example, she declined x-rays in 2004 despite Dr. Waldrop's recommendation, stating she had no insurance. (R. 186.) Additionally, she testified at the administrative hearing that even though Kuumba Community Health and Wellness Center charges a minimal fee for treatment, it was difficult for her to get money to go to the doctor. (R. 261.) While the ALJ must consider the level and type of treatment sought in determining what weight to give a claimant's allegations, failure to obtain medical treatment she cannot afford cannot justify an inference that her condition is not as serious as she alleges. Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir. 1994) (citing Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)). As the Fourth Circuit has stated, "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" Lovejoy, 790 F.2d at 1117 (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).

Dr. Sellars' opinion that Calhoun's depression is significant, chronic and longstanding, coupled with his conclusion that her condition renders her unmotivated to seek treatment, as well as her documented lack of funds to pay for treatment, leads the undersigned to conclude that this case should be remanded for further consideration of the onset date. Additionally, page 4 of Dr.

10

Sellars' report is missing from the record. (See R. 236-40.) While remand on this basis alone may not be appropriate, see Washington v. Commissioner of Social Security, No. 8:08-2592-RBH, 2009 WL 3063005, at *16-17 (D.S.C. Sept. 21, 2009), the absence of page 4 is yet another reason that remand is warranted, particularly considering the relevance of Dr. Sellars' report to this analysis.

There is a potential inconsistency between the denial of disability benefits for the period preceding Dr. Sellars' August 24, 2006 examination and the award of benefits as of that date, given the findings in his report. As such, the ALJ's decision is not supported by substantial evidence. Therefore, the undersigned recommends that this case be remanded for consideration of an earlier onset date. It is further recommended that, on remand, the Commissioner supplement the record with page 4 of Dr. Sellars' report and consider all of the evidence in determining whether an earlier onset date is warranted.

## IV

It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence does not support the Commissioner's decision. Accordingly, the undersigned recommends that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent herewith.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 15th day of January, 2010.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge